Linda KUCIA, Appellee,

v.

**SOUTHEAST ARKANSAS COMMUNITY ACTION CORPORATION, Appellant.**

No. 01–1546WA.

United States Court of Appeals, Eighth Circuit.

Submitted: Dec. 14, 2001.

Filed: March 28, 2002.

Spencer F. Robinson, argued, Pine Bluff, AR, for appellant.

Sara M. Sawyer-Hartness, argued, Monticello, AR (John Ogles, Jacksonville, AR, on the brief), for appellee.

Before LOKEN, RICHARD S. ARNOLD, and BYE, Circuit Judges.

RICHARD S. ARNOLD, Circuit Judge.

This is a Title VII employment discrimination case. Linda Kucia, a white woman, sued her employer for wrongful discharge on the basis of race. The jury returned a verdict for Ms. Kucia. Defendant Southeast Arkansas Community Action Corporation appeals, arguing that the District Court made three errors: first, it should have granted defendant's motion for judgment as a matter of law; second, that a jury instruction on emotional distress was not supported by the evidence; third, that front pay was inappropriate because reinstatement was not impracticable or impossible. Except for the award of front pay, we affirm the judgment of the District Court.

## I.

Plaintiff, Linda Kucia, is a white woman. Her employer, Southeast Arkansas Community Action Corporation, is a non-profit entity that runs a Head Start program for children in Warren, Arkansas. In 1995, Ms. Kucia began working at the Head Start as a teacher's aide. In 1998, Ms. Kucia applied for a teacher position and began working as a teacher of the 3–year old children in August 1998. She was assigned an aide, but this person was part-time and had limitations that affected his work performance. The other two teachers, who were black, had full-time aides.

On August 25, 1998, Isabell Griswold, the Head Start Director, observed an unattended child from Ms. Kucia's class in the hallway. Ms. Griswold verbally counseled Ms. Kucia about this incident and warned her that a reoccurrence would result in disciplinary action. On September 29, 1998, another unattended child in Ms. Kucia's care was found by another teacher, who reported the incident to Ms. Griswold.

As a result of these incidents, Ms. Kucia was placed on leave without pay, but later was allowed to return to work while her performance was being reviewed. On November 9, 1998, Ms. Kucia was advised by Ms. Griswold that she was being demoted to a teacher's aide position. On November 20, 1998, the Director of the Southeast Arkansas Community Action Corporation, Mr. Henderson, told Ms. Kucia that she was being terminated because she violated agency policy twice by leaving children unattended. Both Ms. Griswold and Mr. Henderson are black. Ms. Kucia brought suit against her employer, alleging that she was discharged because of her race.

The jury found that defendant terminated Ms. Kucia in violation of Title VII and returned a verdict of $170,000 in her favor. Both sides filed post-trial motions. The District Court denied defendant's motion for judgment as a matter of law, but granted its motion for remittitur of the emotional distress award. Pursuant to 42 U.S.C. § 1981a(b)(3), the Court limited plaintiff to $50,000 in compensatory damages. The District Court granted plaintiff's motion for front pay, awarding her two years of front pay. It also ordered defendant to pay plaintiff's attorneys' fees. This appeal followed.

## II.

Defendant's first argument is that the District Court erred when it denied its motion for judgment as a matter of law. We review de novo a district court's denial of a motion for judgment as a matter of law. *Ray v. Wal–Mart Stores, Inc.,* 120 F.3d 882 (8th Cir.1997). We conclude that a reasonable jury could have found for Ms. Kucia. She presented sufficient evidence to allow the jury to draw a reasonable inference of discrimination. Specifically, Ms. Kucia introduced evidence that she was the only teacher not assigned a permanent teacher's aide and that her aide

was of inferior quality. She and other teachers testified that this created additional difficulties for Ms. Kucia in monitoring her classroom. The evidence at trial also demonstrated that other teachers had left behind or lost children and had been punished less severely than Ms. Kucia. Although not identically situated to Ms. Kucia, these employees were sufficiently "similarly situated" to allow the jury to draw inferences from the disparate treatment. For example, both Ms. Kucia and Becky Smith were classroom teachers supervised by Ms. Griswold who allowed the same child to be unattended on multiple occasions. See *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir.2000) (noting that similarly situated employees in employment discrimination context should "have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.") Because Ms. Kucia was fired, and Becky Smith was merely demoted temporarily, the jury could have reasonably concluded that race discrimination explained this disparate treatment. Although Ms. Kucia's supervisors testified that her work performance was not satisfactory, she rebutted this evidence with testimony that her direct supervisor gave her a favorable evaluation. Ms. Kucia did not have a strong case. However, when we draw all inferences in her favor, as we must because she is the non-moving party, we agree with the District Court that judgment as a matter of law was not appropriate.

■ Defendant's second argument is that the evidence was insufficient to merit instructing the jury on compensatory damages for emotional distress. At trial, Ms. Kucia's testimony was the only evidence of emotional pain, suffering, mental anguish, and other non-pecuniary losses. She stated, "It's hard for me to hold my head up, okay, not that I'm prouder than anybody else, but it has had an effect on me. Warren is a small community. I'm on edge, I can't be pleasant." App. at 336. Ms. Kucia testified that since her termination she felt like she "couldn't be trusted with children anymore." *Id.* She also referred to marital problems because her husband is a "military man" and "understands things differently than [she does]." *Id.* On cross-examination, part of Ms. Kucia's deposition testimony was introduced in evidence. At her deposition, when asked whether she suffered any mental distress or anguish, Ms. Kucia replied "just personal insult, I guess." *Id.* at 386. She also repeated at trial deposition testimony that she had lost sleep and felt anxious. *Id.*

In addition, Ms. Kucia and her husband separated for a while because of her termination. App. at 342. She did not seek professional help, but she explained this omission by her loss of insurance after defendant terminated her. She did not have the money to see a doctor. *Id.* at 386–87. About a year after termination, she was employed at a day care center at a Presbyterian church, and a few months later opened her own day care business. *Id.* at 339. On the other hand, as of the day of trial she had still not overcome her fear of putting her hands on children, *id.* at 389, and the amount of business done by her in-home enterprise appears to have been negligible, or at least very small.

■ "An award of damages for emotional distress must be supported by competent evidence of 'genuine injury.'" *Forshee v. Waterloo Industries*, 178 F.3d 527, 531 (8th Cir.1999) (citing *Carey v. Piphus*, 435 U.S. 247, 264 n. 20, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). A "plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard." *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1065 (8th

Cir.1997). Plaintiff was awarded $50,000 as compensatory damages for emotional distress. We review this award with a keen sense of respect for the latitude given to juries. The question is whether the award is so excessive as to shock the conscience. *Mathieu v. Gopher News Co.*, 273 F.3d 769, 783 (8th Cir.2001). We are mindful also that the trial court, which upheld the award in this case, "has heard the evidence and knows the community standards." *Norton v. Caremark, Inc.*, 20 F.3d 330, 340 (8th Cir.1994).

Two of our recent cases mark out the boundaries for our reviewing function. In *Forshee v. Waterloo Industries, Inc.*, supra, a jury verdict of $9,631 for emotional distress was reversed for insufficiency of evidence. We noted that the verdict was based entirely upon the plaintiff's own testimony. "She testified that after being terminated she 'went home and sat and cried about the rest of the day,' and that she was forced to take a job at lower pay and work two jobs." *Id.* at 531. Aside from the loss of the job itself, little else occurred. There was no medical treatment, and no corroborating evidence. The plaintiff found a new job almost immediately.

By contrast, in *Mathieu*, supra, the plaintiff's testimony was also the only evidence supporting an award for emotional distress. There was no testimony by a medical professional. However, the plaintiff had lost a job of 34 years, was forced to reduce his standard of living, and had become depressed. A judgment declining to set aside a jury award of $165,000 for emotional distress was affirmed.

■ We think the evidence was sufficient in this case. It is not exactly like *Forshee* or *Mathieu*. Each case must be considered on its own facts, with a healthy regard for the prerogatives of the trier of fact and the presiding judge. The plain-

tiff's period of employment was much shorter than that of the plaintiff in *Mathieu*, but her testimony of mental distress and disruption of life was, we think, stronger than that presented in *Mathieu*, at least as reflected in our published opinion. In these circumstances, though the question perhaps is close, we cannot say that the jury award was wholly lacking in reason, or so excessive as to shock the judicial conscience. The District Court's action in declining to set the award aside will be affirmed.

■ Defendant's third argument is that the District Court erred in awarding Ms. Kucia two years of front pay. Defendant argues that reinstatement, rather than front pay, was the appropriate remedy because defendant was willing to give Ms. Kucia her position back.

■ We review the District Court's award of front pay for abuse of discretion. *Sanders v. Alliance Home Health Care, Inc.*, 200 F.3d 1174, 1176 (8th Cir.2000). Front pay is an equitable remedy "given in situations where reinstatement is impracticable or impossible." *Kramer v. Logan County School District No. R–1*, 157 F.3d 620, 626 (8th Cir.1998). The District Court did not find that reinstatement was "impracticable or impossible." *Id.* at 626. Indeed, the Court gave no reasons at all for awarding front pay as opposed to reinstatement. The defendant offered plaintiff a new job at the same pay and benefits. Plaintiff points out, however, that the new job would not have involved working with children, and that it had to do with reselling used clothes in a room described by the plaintiff as isolated and infested with rats and snakes. App. at 335–36. We can understand why the plaintiff would not accept such a job, nor do we believe that she was required to do so. This evidence, however, does not show that it was imprac-

ticable or impossible for the Court to instruct defendant to give plaintiff her old job back, or at least one more comparable to it. As we read the cases, front pay is an exceptional award. Reinstatement should be the norm.

■ Accordingly, the District Court's award of front pay will be vacated. On remand, the issue of equitable relief, whether reinstatement or front pay, should be reconsidered. The District Court may take additional evidence if it believes that such a procedure would serve the interests of justice. Equitable remedies are forward-looking. They should depend on the state of facts existing at the time the remedy is either granted or denied. The District Court's order from which this appeal is taken was entered more than a year ago. Equitable relief should be reconsidered in light of current circumstances.

### III.

The judgment of the District Court is affirmed, except as to the award of front pay. The case is remanded for further consideration of that issue in accordance with this opinion.